THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* FRANK ANTONIOLI ET UX., AND PETER ANTONIOLI, ET UX., DEFENDANTS AND RESPONDENTS.

No. 10730.
Submitted March 10, 1965.   Decided May 4, 1965.
401 P.2d 563.

Daniel J. Sullivan (argued), Forrest H. Anderson, Atty. Gen., Helena, for appellant.

F. P. Kelly (argued), Butte, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by the State Highway Commission from a judgment rendered pursuant to a jury verdict in an action in

eminent domain brought in the district court of Silver Bow County. The State instituted the action· to condemn the defendants', Frank and Peter Antonioli's, five-sixth interest in part of a patented mining claim lying on the western outskirts of Butte, Montana. The other one-sixth interest had previously been acquired. The claim, known as the Spur Lode, is located north of the old Butte-Anaconda highway "Rocker Road," and south of the four-lane highway going west from Butte. The claim does not touch or abut either of these roadways; the only access being over property belonging to others.

The new Interstate Highway runs north and south through this area and passes over the eastern half of the claim. The claim has been reduced to an eight acre tract lying west of the Interstate, and four acres isolated on the "island" area between the two Interstate directional lanes. About four and one-half acres were condemned. Because the Interstate is a "limited access" roadway the only way one can get from the eight acre tract to the four acre tract is by going down the "Rocker Road" to where that road passes under the Interstate and then coming back on the "island" area to the isolated part of the claim.

It was agreed between the parties that the value of the surface acreage taken was $100 per acre. The defendants sought to establish that the market value of the claim was in the $100,000 range and that approximately 60 percent of this value was lost by the taking of the part necessary for the highway. Frank Antonioli testified that in his opinion the claim had a market value of $100,000 and that the damages suffered were 66 percent. Walter Everley, a geological engineer, testified that in his opinion the fair market value of the claim was in the $90,000 to $100,000 range and that 60 percent of the value was lost by the taking for the highway. The opinions as to damages were, therefore, $66,666.66 and approximately $60,-000.00 respectively.

The State's three expert appraisers testified that the value

414

of the land taken and the damage to the remainder was as follows: Mr. Acuff, $230.00; Mr. Eslick, $846.25; and Mr. Steel, $839.00. The jury returned a verdict of $459 for the land taken (the stipulated $100 per acre), and $9,541 for damages to the remainder or $10,000.00. The $459 figure was subsequently reduced because the jury had not taken into account the fact that the Antonioli brothers own a five-sixth interest and not the whole.

The State has appealed and in their first two specifications of error charge that it was reversible error for the trial court to allow Frank Antonioli and Walter Everley to give value estimates over the objection that no sufficient foundation or qualification had been laid for such testimony. It does appear to us that neither Frank Antonioli nor Walter Everley gave a sufficient basis for their dollar estimates of the value of and damage to the claim.

These two witnesses testified that there are two veins evident on the surface of the claim, and that there are showings of lead, zinc, manganese, silver and gold both in the veins and on the surface generally. Frank Antonioli and Walter Everley are both graduate mineral engineers and have so practiced in the Butte mining region for many years. Their qualification as mining experts is unquestioned. They testified that although the shaft is filled with water the water probably would not injure the timbering that buttresses the walls of the shaft. Peter Antonioli testified to the same familiarity with the surface but did not give a market value estimate.

John H. Cole, a local mine operator and investor, testified that during World War II a government sponsored manganese stockpile program made it profitable for some miners in the immediate or nearby area to mine manganese for the war effort. He bought some manganese from such miners and sold it to the government. The mines from which he bought the mineral are close to the Spur Lode, but the Spur Lode was not worked at that time.

Finally, there was introduced into evidence a report of a state mining inspector in the "Montana Inspector of Mines Report 1892-1895" to the effect that the Spur Lode had been worked off and on from 1882 to 1892, the date of the report. It is stated in that report that there was an inclined shaft to the 300 foot level with some drifts extending off into the ground, and that twelve men were working the Spur Lode. There is no description of the ore or any information as to the richness or extent of any ore body present. No later report was presented. Certain damages to the surface were testified to and will be considered later in the opinion. The above is, however, the extent of the material introduced into evidence by the defendants relative to the market value of the mining claim.

The leading case on expert valuation of mining claims happens to be the old Montana decision of Montana Railway Company v. Warren, 6 Mont. 275, 12 P. 641; affirmed on appeal: 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681. In the Montana Railway Company case it was held that an undeveloped mining claim, termed a "prospect," could have a market value even though based on speculation of the worth of the claim. We agree that mining claims and certain other types of properties can and do have market values based on the speculative character of the property. Phillips v. United States (9th Cir. 1957), 243 F.2d 1; 4 Nichols, Eminent Domain § 13.21 pp. 408-410; Broadbent, Eminent Domain Valuation of Land Containing Minerals, 6 Utah L.Rev. 345, 356 (1958); Horgan, Mineral Valuation in Eminent Domain Cases, 7 Hastings L.J. 163 (1955). However, appellants do not contest this rule of law. What is at issue here is the sufficiency of the basis upon which an expert witness grounds his opinion as to the market value of speculative property.

The transcript does not show that ample, credible evidence was produced of the character, extent, and richness of the ore body so as to justify the large market value estimates, to the contrary the claim was bought at a tax sale from the county. Sure-

ly, more technological enlightenment can be presented if the claim truly has a present market value in the $100,000 range.

"* * * Where the testimony submitted to the jury and relied upon by the landowners in their efforts to establish just compensation is testimony from expert witnesses, the opinions as expressed by the experts must be founded upon substantiated evidence and must not be based upon unsupported assumption, conjecture or speculation." United States v. Certain Land, Etc. (D.C.Ala1963), 214 F.Supp. 148, 150. See also: Texas Electric Service Co. v. Vest (Tex.Civ.App.1958), 310 S.W.2d 733; Los Angeles County v. Signal Realty Co., 86 Cal. App. 704, 261 P. 536; State Highway Comm'n v. Smith & Jesson, 141 Mont. 302, 377 P.2d 352. Here there was presented no evidence of any core drilling, surface or subsurface sampling, geological reconnaissance, geophysical exploration, geochemical analyses, or smelter reports of former production. In fact, no specific ore minerals were even referred to. In a case arising in the early days of mining in the Butte area it was claimed that the $7,500,000 valuation placed on the Fourth of July Mine for stock transfer purposes could not be refuted even though it was uncomfortably clear that the mine was only worth about $75,000.00. The argument was that since a mining claim is of a speculative nature who could tell just how much it was worth and, therefore, one valuation was as good as another. This court felt differently and stated:

"* * * Estimating the value of a mine is no longer the result of hasty conjecture. Former methods have given way to scientific tests, based upon geological conditions, underground surveys and measurements, careful examinations of ore in sight, the known history of ore bodies in the vicinity, the method and cost of treatment of the ore, together with facilities for its transportation to markets." Kelly v. Clark, 21 Mont. 291, 339, 53 P. 959, 971, 42 L.R.A. 621. The Kelly case was decided in 1898 and if the court could require a valuation technique as quoted above we similarly require one today. For certainly,

the sciences have so progressed that much more data can be compiled today than was possible in the early days of mining in Butte.

The State's witnesses testified that the value was less than $1,000.00. These estimates may be incorrect or unreasonably low but, at least, the witnesses provided the court with a basis for their estimates. The difficulty in detecting a pulse or trend of a mining claim market in the Butte area was described and the method and manner of approach to making the estimate was given by each of the three witnesses. To combat this, it is not a hardship to require the defendants to present sound technological proof of the worth of the claim. Appellant's Specifications of Error Nos. 1 and 2 are well-taken.

In the third specification of error it is alleged that the court erred in giving Instruction No. 14:

"The fact that the value of a mining claim may be speculative and uncertain does not eliminate it as an element to be considered in the determination of the market value of the mining claim." The giving of this instruction is not error for it is merely the rule as set forth in the Montana Railway Company case, supra. However, while we agree that speculative properties may have a market value we wish to emphasize that our holding above is that the market value estimates for speculative as well as all properties must be preceded by a sufficient and proper foundation and qualification.

The fifth specification of error involves the refusal of the court to give Instruction No. 18A, which is to the effect that any use contended for that is speculative and problematical and not one arising from the present adaptations of the property then such use shall not be considered in estimating damages to the property. The rule of law so stated is correct and the instruction should have been given under the situation here existing, but in view of our disposition of this cause further discussion is unnecessary.

The seventh specification of error charges that the verdict

is against the evidence, and presents a slightly different problem. There is merit in the State's contention on this point because without much of the evidence pertaining to damages that was speculative and conjectural the verdict could not stand. We have noted above that there was not a sufficient foundation for the value estimates placed on the Spur Lode by the defendants. In this part of the opinion we find objection to the alleged damages to the remainder. There was no showing that there is any ore worth mining on the Spur Lode claim, much less a showing that if the property is ever mined all or any of the damages alleged will occur. The testimony of the defendants was that the taking of the part for the highway so cramped the remainder that there would not be room for a generating plant, dry house, powder magazine, mine building, loading ramps, storage, dump space, etc. In addition, testimony was received to the effect that if the claim were mined directly under the Interstate the operations would have to cease within 100 feet of the surface lest the roadbed cave in. The truth is that the mine is unopened now, was not even opened during the war years, and has no surface structure presently other than an old concrete hoist foundation. All of the surface facilities referred to are not currently in existence and there is no proof that any of them will ever be required. For this reason such evidence of damage may not be received as it is speculative and conjectural. This same kind of problem was presented in Alexander v. State Highway Comm'n, 142 Mont. 93, 381 P.2d 780. In that case we held that an exhibit which listed many buildings and fixtures not currently in existence as necessary for a cement batching plant, and the cost of those improvements, was speculative and conjectural. Since testimony as to such hypothetical damages tends to build up the verdict, it is reversible error to allow the testimony in over objection, and such was done in the instant case. State Highway Comm'n v. Smith & Jesson, 141 Mont. 302, 377 P.2d 352.

■  In eminent domain not every potential damage may be compensated for. Remote, conjectural, and speculative damages are *damnum absque injuria,* unless certainty that they will occur can be soundly established. 5 Nichols, Eminent Domain, § 18.42 [1], p. 248-49; Lewis and Clark County v. Nett, 81 Mont. 261, 263 P. 418; State v. Hoblitt, 87 Mont. 403, 288 P. 181.

■  It is necessary for the condemnee to establish the real and actual damages to the remainder due to the taking of the part for the highway. State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617; United States v. Certain Lands in Town of Highlands (D.C.N.Y.1942), 45 F.Supp. 126; Commonwealth Dept. of Highways v. Rankin (Ky.1960), 346 S.W.2d 714; United States v. 620.00 Acres of Land (D.C.Ark.1952), 101 F.Supp. 686; Arkansas State Highway Comm'n v. Stanley, 234 Ark. 428, 353 S.W.2d 173; Anno: 156 A.L.R. 1416.

■  The fourth specification of error is that it was error for the court to give Instruction No. 15, which instructed the jury that they could consider the way in which the highway might impede the removal of minerals from beneath the surface of the claim in figuring the damages. It was error for the court to give this instruction because these, too, are speculative and conjectural damages. There is no way for a jury or anyone else to judge injury to a mining claim that has not even been sensibly explored and has not been worked for 65 years. Wallace v. Jefferson Gas Co., 147 Pa. 205, 23 A. 416.

Throughout the opinion the word "speculative" has appeared in two senses. In the one sense, it is used to describe undeveloped property that may have a value due to mineral, timber, housing, or other potential. A market value for such property may be shown. The value is speculative, but it is able to be objectively appraised. The Warren case, supra, uses the word in this sense. The other use of the word is when in the company of the word "conjectural." In this sense the meaning is that certain damages to property may not be recognized by law

and compensated for because they are too remote, obscure, undefinable, problematical, or the like. The market value estimates and the damages complained of by the defendants were subjective, speculative, and conjectural. Jury findings as to value and damages may be disturbed when such findings are clearly out of proportion to the harm shown to have been done. State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617.

The sixth specification of error is unrelated to the others and involves an adjustment of the verdict. In view of our holding here a discussion of this specification is not necessary.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICES JOHN C. HARRISON, DOYLE, ADAIR and CASTLES concur.