THE STATE OF MONTANA ON THE RELATION OF THE STATE
HIGHWAY COMMISSION OF THE STATE OF MONTANA, RE-
LATORS, *v.* THE DISTRICT COURT OF THE FIRST JUDI-
CIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE
COUNTY OF LEWIS AND CLARK, AND THE HONOR-
ABLE JAMES D. FREEBOURN, DISTRICT JUDGE, RESPON-
DENTS.

No. 11079.
Submitted March 7, 1966. Decided March 23, 1966.
412 P.2d 832.

Robert A. Tucker (argued), Helena, for relators.

John W. Bonner (argued), Arthur Acher (argued), Wellington D. Rankin (argued), Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding arising in an application for a Writ of Supervisory Control under circumstances following. We issued an Order to Show Cause. Return was made, combined with a Motion to Quash. The matter was briefed and argued by counsel.

The circumstances giving rise to the application were that there is pending an action in eminent domain by the State of Montana, acting through its State Highway Commission against John B. and Margaret M. Barnes. We will hereafter refer to these parties as the State and the Owners. The Respondent District Court will be referred to as to each judge acting. The State filed its complaint on March 8, 1965. The owners answered on April 3, 1965, and a preliminary order of condemnation was issued on June 23, 1965. An order of possession was had on August 2, 1965.

The land sought to be condemned was a total of 48.89 acres for interstate highway right-of-way. The owners' ranch consisted of some 3,146 acres total. Of this, 338 acres were called bench land, 102 acres of bottom land, and the balance of 2,706 acres grazing land. The taking was through the heart of the bottom land operation, causing irrigation problems, access problems, but of importance to this proceeding, the one water well, used for both domestic and stock purposes was taken.

The water well taken was described by the owner as having been dug about fifteen feet and a sand-point driven to about 25 feet in depth. No volume figures were given, but apparently this was just an ordinary hand-driven shallow well. Its importance though was measured in huge terms. One witness depreciated the buildings as "completely destroyed" by reason

of a "dry home operation—no household water." Another witness testified that the items of depreciation pertaining to the well amounted to $54,000. The same witness had depreciated the entire operation, including the $54,000 well, at $86,000. This demonstrates, without unduly burdening this opinion with details, the importance attached to the well.

A further illustration of the importance placed upon the water well by the owners is that both appraisal witnesses placed the value of the whole ranch at about $180,000 before the taking. This for a 3,146 acre ranch. After losing but 48 acres, or only 1½ percent of its area, these two witnesses left only a value to the entire ranch as about $90,000 or about 50 percent of its original value.

On August 10, 1965, a value hearing was had before three commissioners with District Judge Lester H. Loble presiding. The descriptions of the water well importance were dwelt upon by the owners and their witnesses. Testimony was given that seven wells had been drilled or driven at depths from 6 feet to 64 feet with most of them about 15 feet. In the bottom land described, the water table, according to the owners, should have been about twelve feet, but a blue clay formation was then encountered. This had never been penetrated.

The Commissioners' award was assessed as: For lands taken —$23,344.85. For depreciation to remainder not taken—$46,-395.00, for a total of $71,739.85. The State appealed; likewise the owners appealed.

At the commission hearing, Judge Loble issued an instruction, and then interpreted the instruction to mean that the State would not be allowed to enter any evidence that another water well might be drilled to replace the one taken, and the commissioners were instructed to consider the remainder of the land taken as waterless.

Now, jury trial, trial de novo approaches. To prepare for the jury trial and to meet the issue of "no water" on the remainder, the State, on September 21, 1965, filed a motion for

inspection under Rule 34, M.R.Civ.P. The motion requested the court's permission to "enter upon the land of the defendant landowners for the purpose of inspecting, measuring and surveying the land by means of drilling of two test wells in the vicinity of the landowner's residence for the purpose of determining the levels of underground water which can be used for domestic and stock water on the land not being taken by the plaintiff."

The motion for inspection was supported by an affidavit. The owners filed a Motion to Quash and two affidavits. In one of the affidavits by counsel for the owner, counsel put it that "evidence as to the value of the well was introduced by the defendants, in conformity to the rule set forth in State Highway Comm'n v. Antonioli." 145 Mont. 411, 401 P.2d 563.

Following this, and on December 27, 1965, District Judge James D. Freebourn having assumed jurisdiction, granted the motion to quash and denied the right of inspection.

This application followed.

To aid in our analysis, we call attention to these matters. The subject of the controversy here, or the item of damage, is the damage to the remainder. No real problem exists as to the cost of the well taken—rather it is the effect on the remainder. The owners put on evidence of "no-water," but would block any evidence by the State that water is available. The State, in its motion for inspection and affidavit supporting, reasonably, we believe, limited its inspection request to two drillings and offered to put up a bond to protect the owners against any damage.

Under what the owners' counsel termed the "Antonioli" rule, the owners went to great length to demonstrate "no water" could be obtained for the remainder. At the Commission hearing the State was prevented from showing that water might be obtained. Now in preparing for trial the State desires by inspection to determine the true facts and eliminate speculation—either water is not available or water is available and if

so in what quantity, quality and cost. Certainly, the ultimate inquiries in what a willing buyer and a willing seller in the open market would inquire into.

Thus, our problem is whether Rule 34, M.R.Civ.P., permits this in an eminent domain proceeding under these circumstances. We think it clear that Judge Freebourn, following Judge Loble's instruction and ruling, did not feel that he could allow it. In other words, we do not find that he exercised discretion at all, but felt unable to allow discovery. In his order granting the motion to quash, Judge Freebourn noted the grounds, particularly that Rule 34 does not authorize such an inspection. Judge Freebourn also noted that the motion to inspect is actually a motion to "explore," and the owners in this proceeding make much of a distinction between inspection, survey and "exploration."

Continuing our analysis of what our particular problem is, we observe that, although this is an eminent domain proceeding in an action already in being, the issue remaining is not the public use and need or the right to condemnation, but rather the just compensation to which the owner is entitled. More particularly, even, as we have already indicated, it is the damage to the remainder or severance damage. Thus, the motion for inspection on the remainder is to gather evidence to determine one of the issues in the lawsuit, the value of the remainder. And further, it is to meet the issue of "no water" on the remainder brought into the case by the owners. The owners brought into the issues testimony that water is not available on the remainder and based their very substantial severance damage claim on this factor. The State contends it is entitled to rebut the claim, if inspection reveals such to be the true facts.

Rule 34, M.R.Civ.P., provides:

"Upon motion of any party showing good cause therefor * * * and subject to the provisions of Rule 30(b), the court in which an action is pending may * * * (2) order any party to permit

entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examination permitted by Rule 26(b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

Rule 26(b), M.R.Civ.P., therein referred to, provides:

"*Scope of Examination.* Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 30(b), M.R.Civ.P., also referred to in Rule 34, provides in part:

"*Orders for the Protection of Parties and Deponents.* After notice is served for taking a deposition by oral examination, * * * for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, * * * or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, * * * or that secret processes, developments, or research need not be disclosed, * * * or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

Under R.C.M.1947, sections 93-6216 and 93-6218, right of

inspection has long been recognized in this state. In State ex rel. Anaconda Copper Min. Co. v. Dist. Ct., 26 Mont. 396, 403, 68 P. 570, 573, this court said:

"So far as we are aware, the provisions embodied in this section are peculiar to our own jurisdiction. We find that the section was enacted by the territorial legislature of 1881 (Acts 12th Sess. p. 10) as an amendment to the Code of Civil Procedure of 1879, and that it has been incorporated in all the revisions of this Code since that time. The constitutionality of it was called in question in St. Louis Min. & Mill Co. v. Montana Co., 9 Mont. 288, 23 Pac. 510, and in the same case on error to the Supreme Court of the United States, 152 U.S. 160, 14 Sup.Ct. 506, 38 L.Ed. 398, but the extent of the power of the court under it has never been considered or determined. * * * Where a suit is pending involving the rights of the parties to the particular property, the court proceeds under sections 1314 and 1315 of the Code of Civil Procedure, and under them the inspection may be made notwithstanding it involves a temporary occupancy of other property than that in controversy. These sections are but declaratory of the inherent power of courts of equity (perhaps, also, of courts of law), and rest upon the principle that the parties should be enabled to put the court in possession of all the facts touching the controversy, to the end that their rights may be properly adjudicated."

The Court further stated:

"As to section 1317, we are aware of no case in which the extent of its application has been considered, and the question of its proper construction is now presented for the first time. We must, therefore, refer to the statute itself, and determine from the terms employed in it what circumstances are necessary to put the power of the court in motion.

"Passing, for the present, the character of the interest necessary to be exhibited by the petitioner, and assuming that an exhibition of any interest, though a disputed one, is sufficient, *it seems clear that the inspection must be limited to premises in*

*which the petitioner has some sort of proprietary interest.* The purpose of the inspection is twofold, namely: (1) To ascertain whether the right or interest of the petitioner in the property in possession of the adverse party is being injured; and (2) to ascertain by inspection of such premises whether the right or interest of the petitioner in other premises is being injured." (Emphasis supplied.)

It is the "some sort of proprietary interest" phrase underlined above that the owners attach significance to, claiming that since the State's taking does not involve the remainder, the State does not have "some sort of proprietary interest."

The Court in State ex rel. Anaconda Copper Min. Co. v. Dist. Ct., supra, further stated:

"* * * the whole basis of the proceeding is some interest or ownership in the property itself which is a subject of conveyance, and supports the contention of the relator that the legislature manifestly did not intend that one person should be allowed by a *summary proceeding* to invade the property of another, and make inspection of it, merely because such an inspection might benefit the applicant. * * * 'Every citizen holds his property subject to the power of the state to prescribe reasonable regulations for the protection of the property and rights of others.' State [ex rel. Anaconda Copper Mining Co.] v. District Court of Second Judicial Dist. of Silver Bow Co., 25 Mont. 504, 65 Pac. 1020. But, beyond sustaining the reasonable burdens thus imposed upon him, he is not required to submit to any invasion of his property or possessions; and no court or judge has the power to interfere with him in the enjoyment of his property, *except so far as such interference may be warranted by the inherent power of the court or by express legislative sanction, and then only in the interest of justice.* (Emphasis supplied.)

"It does not appear that the petitioner has any interest in the Anaconda and St. Lawrence claims. The basis of his asserted right to enter the relator's shafts, drifts, and other

workings in these claims is the supposed existence of extra-lateral rights upon a vein in the apex of which is within the boundaries of the Fairmount claim. Under the construction we have given the statute,—and, in our opinion, it is the only construction of which it is fairly susceptible,—the exhibition of this right is not sufficient to give the court, or its judge, jurisdiction to make the order."

We see then that the holding here is that the exhibition (or foundation) of the right was not sufficient. As we will hereinafter point out, the new Rules of Discovery are broader in their application than were the statutes under consideration in the year 1902; and that inquiry into relevancy and good cause for the inspection will supply what this court in the 1902 case called "some sort of proprietary interest."

In State Highway Comm'n v. Antonioli, supra, 145 Mont. at 419, 401 P.2d at 567, this court stated:

"It is necessary for the condemnee to establish the real and actual damages to the remainder due to the taking of the part for the highway. State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617; United States v. Certain Lands in Town of Highlands (D.C.N.Y.1942) 45 F.Supp. 126; Commonwealth Dept. of Highways v. Rankin (Ky.1960) 346 S.W.2d 714; United States v. 620.00 Acres of Land (D.C.Ark.1952) 101 F.Supp. 686; Arkansas State Highway Comm'n v. Stanley, 234 Ark. 428, 353 S.W.2d 173, [4 A.L.R.3d 749]; Anno: 156 A.L.R. 1416."

We cited above the case of Arkansas State Highway Commission v. Stanley. This 1962 Arkansas case involved interpretation of discovery procedure. There it was said:

"The second issue is the matter of discovery. Before the trial the highway commission, having been refused access to that part of the appellees' land not being condemned, applied to the court for an order permitting it to enter this land and make test drillings for the purpose of determining the extent of the mineral deposits therein. In response to this motion the

appellees waived their claim to severance damages and used that waiver as a basis for contending that the condemnor was not entitled to explore the rest of their land. The court sustained the landowners' position and entered an order declaring that no proof would be received concerning the physical characteristics of the land not being taken.

"This was error. Our discovery statutes provides: 'Upon motion of any party showing good cause therefor * * * the court in which an action is pending may * * * order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon.' Ark.Stats.1947, § 28-356.

"The language of this statute was taken verbatim from Federal Civil Rule 34, 28 U.S.C.A. It follows that our legislature, in adopting the wording of the federal rule, also adopted the principle of liberal construction that had been announced in the leading case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451: 'We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.'

"The discovery provision authorizing an entry upon land is to be liberally construed. United States v. Nat. Steel Corp., D.C.Tex., 26 F.R.D. 603. The extent to which a discovery order may go is well illustrated by the holding in Williams v. Continental Oil Co., 10th Cir., 215 F.2d 4, cert. den. 348 U.S. 928, 75 S.Ct. 341, 99 L.Ed. 728. The question was whether the defendant's oil well had been drilled so far off the perpendicular as to invade the plaintiff's land. The trial court refused to allow the plaintiff to enter the land and make a directional

survey, which would involve unseating the pump at the bottom of the well and pulling out all the tubing, with some danger to the future productivity of the well. 14 F.R.D. 58. The court of appeals reversed this order and permitted the survey, reasoning that good cause had been shown simply because if the plaintiff could not obtain the desired information by means of the requested survey it could not be obtained at all. The possibility that the well might be damaged was met by the requirement of an indemnity bond.

"In the granting or refusal of an order for discovery the two controlling considerations are relevancy and good cause. Barron & Holtzoff, Federal Practice and Procedure (1961), § 793. Here it is plain that the appellees' waiver of severance damages did not destroy the relevancy of the information sought by the highway commission. Severance damages are compensation for the landowner's loss in having his property cut in two. With those damages out of the case the remaining issue is the market value of the tract being taken. If the existence of other nearby mineral deposits has any relevancy to the question of market value then the disclaimer of severance damages is not a bar to the commission's right to discovery.

"It can hardly be seriously denied that the market value of lands containing non-precious minerals such as this white gravel and concrete aggregate is directly affected by the abundance or scarcity of similar deposits in the vicinity. If the appellees owned the only such deposits in Saline county they would evidently be in a position to demand a better price for their land than would be the case if the minerals could be found almost anywhere in the county. Consequently it is important for the condemnor to be in a position to prove the existence of other deposits. Specifically, if it should be found that the rest of the appellee's land contains more white gravel and concrete aggregate than they can be expected to sell in the indefinite future, that fact directly affects the market value of the tract being taken and is a proper matter for the jury's consideration.

"Good cause for the discovery order exists. The statute provides that the court may permit an entry upon a party's land for the purpose of inspection. There is no practical way to inspect minerals in place except by such test drilling as both parties have already engaged in upon the tract being condemned. The exploratory holes appear to be three inches in diameter and are refilled immediately, so that there is no suggestion of any injury to the land. We are therefore of the opinion that the highway commission is entitled, at a reasonable time in advance of a retrial, to an order permitting it to enter upon the land for the purpose of ascertaining the extent of mineral deposits therein. Of course the commission may be required to give a bond if the landowners undertake to show, as they have not yet done, that the drilling may damage the land."

The Arkansas Court discussed this matter so well that we have quoted it at length. Note, that even though the landowners had *waived their claim to severance damages,* the Arkansas Court still looked to relevancy and good cause. In the instant case, the very essence of the controversy is damage to the remainder or severance damages and the relevancy and good cause are clear. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation and a jury consideration.

Counsel, for the owners here, quotes and urges the dissent in the Arkansas case as proper law. We do not necessarily disagree because the dissent there carefully points out that no effort was made by the landowners to show a scarcity of mineral deposits. In the instant case, the owners made great effort to show a lack of water on the remainder. Also in the Arkansas case, a waiver of severance damages was made, the opposite here.

We have not discussed the adequacy of protection to the landowner for damages done, if any. Our entire discussion is based on the fact that the landowner has already been recom-

pensed to the extent of the preliminary condemnation order and the grant of possession. The owners have already drawn down the statutory 75 percent of the deposit of $92,220.90. Additionally, the State offered to post a cash bond to guarantee payment of any damage. The district court did not inquire into reasonable restrictions nor protection against damages.

We find all of these matters sufficiently protecting or able to protect the constitutional rights of the owner, and therefore will not further discuss constitutional questions posed.

Holding, as we have indicated, that the State does have a right to inspection, we wish to comment on the alternative to this course.

If the State were to be denied the opportunity to discover, then the State could by objection prevent the owners from putting into evidence the damages to the remainder caused by a lack of water. This of course, might do irreparable injury to both parties and would not search for the ultimate truth.

In summary, we must construe Rule 34 so as to secure justice through fair trials. Our Rules were adopted to get away from the booby traps which beset lawyers and the courts under the previous practice. If these Rules are to work to accomplish the purpose for which they were intended and provide an honest and fair judicial system, they must be interpreted to guarantee fair play to all litigants. Certainly Rule 34 was written to further, not defeat, the ends of justice.

We have not heretofore ruled on the owner's motion to quash these proceedings. It is denied.

For the foregoing reasons, a writ should issue directing the district court to permit discovery and inspection under such conditions as to it seems reasonable and just in the premises. It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, DOYLE and ADAIR concur.