Daniel DENARDO, Appellant,

v.

**GCI COMMUNICATION CORP., Appellee.**

No. S–8705.

Supreme Court of Alaska.

Aug. 20, 1999.

Rehearing Denied Sept. 22, 1999.

Daniel DeNardo, pro se, Anchorage.

Dan K. Coffey, Law Offices of Dan K. Coffey, P.C., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*O P I N I O N*

EASTAUGH, Justice.

## I. *INTRODUCTION*

In a suit against his telephone company, a customer claimed that its failure to reactivate his account prevented him from entering its call-to-enter sweepstakes and deprived him of prizes having a total value of $1,020,000. The superior court granted summary judgment and attorney's fees to the company, reasoning that the company's tariff barred the customer's claim and that the claimed damages were too speculative. We affirm. Given the great improbability that the customer would have won any prize, we conclude that the customer's claim that the company caused him damages equal to the value of the prizes is too speculative.

## II. *FACTS AND PROCEEDINGS*

GCI Communication Corporation opened a long-distance telephone calling card account for Daniel DeNardo in 1984. DeNardo used the account for seven years and then did not use it for a considerable period of time. After the account had not been used for eighteen months, GCI put the account on inactive status. When DeNardo attempted to use the account again in November 1995,[1] a recording told him to call a toll-free number. When he did so, a GCI customer service representative asked DeNardo to identify himself by providing his social security number (SSN). GCI claims its representative also offered DeNardo the option of confirming his identity by giving his driver's license number or a current residence address. DeNardo refused and asked to speak to the customer service representative's supervisor, who confirmed the subordinate's statements.

In December 1995 DeNardo again called to reactivate his account; this time, he provided an employer identification number (EIN). The customer service representative thought the number was DeNardo's SSN. Because the number was not a valid SSN, GCI declined to reactivate DeNardo's account.

Two weeks later DeNardo again called GCI; he was told that the "SSN" he had provided was invalid, and that he would have to fill out a new credit application to reactivate his account. DeNardo refused and his account remained inactive.

From September 1995 to January 1996, GCI ran a promotion called the "Thanks a Million" sweepstakes, in which GCI's residential customers would be entered in a sweepstakes contest each time they made a long-distance call through GCI. GCI customers and non-GCI customers could also enter by submitting a hand-printed entry containing specified information. GCI advertised prizes, including interim prizes and a $1,000,-000 grand prize. DeNardo, who claimed to have made one qualifying call during this period, was not entered in the contest.

DeNardo sued GCI in April 1997. He alleged that he suffered damages of $1,020,-000 because, no longer having access to GCI's services, he was not permitted to enter the contest. DeNardo claimed breach of contract, bad faith, and punitive damages. GCI moved for summary judgment, and the superior court granted GCI's motion. DeNardo appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

We use our independent judgment to review grants of summary judgment.[2] "We will affirm a grant of summary judgment if the evidence in the record, viewed in the light most favorable to the non-moving party, fails to disclose a genuine issue of material fact, and the moving party is enti-

---

**1.** DeNardo claims he used the account without difficulty in September and October of 1995, though his own evidence is inconclusive on this point.

**2.** *See Baxley v. State,* 958 P.2d 422, 428 (Alaska 1998).

tled to judgment as a matter of law." [3] We may affirm a grant of summary judgment on any basis appearing in the record.[4]

We review a trial court's award of attorney's fees and costs under the "abuse of discretion" standard.[5]

### B. Issues Arising under the Alaska and United States Constitutions

■ DeNardo's appeal asserts various claims under the Alaska and United States constitutions. DeNardo did not mention either constitution or any constitutional provision in his superior court complaint or his memorandum opposing summary judgment. DeNardo raised his constitutional claims for the first time in his motion for reconsideration, and did so there in only a cursory fashion.

■ Issues raised for the first time in a motion for reconsideration are untimely.[6] Because these issues are not properly before us on appeal, we decline to consider them.[7]

### C. DeNardo's Damages Claims

DeNardo claims it was error for the superior court to conclude that his compensatory damages claim was too speculative and that punitive damages were unavailable.

#### 1. Compensatory damages

The superior court granted summary judgment to GCI in part because it considered DeNardo's compensatory damages claim to be too speculative. It reasoned that the chance could have been worth as much as the value of first prize and, "much more likely," as little as nothing. As we have said before,

> a plaintiff alleging breach of contract must present evidence sufficient to calculate the amount of the loss caused by the breach. The plaintiff "need not prove the amount of damages with exact detail, but the evidence must provide a reasonable basis for the jury's determination." [8]

The calculation of the damages DeNardo seeks is not in itself difficult. He seeks the value of the prizes he claims he could or would have won if he had been able to enter the sweepstakes. The amount of each prize was certain.

But that does not mean the judgment should be reversed. To recover, DeNardo must show that the damages he alleges are not so remote from the alleged breach as to be conjectural. DeNardo engages in calculations to demonstrate that the *chance* was worth something, but his damages claim is for the value of the prizes, not the value of the chance to win the prizes. His calculations concern only the value of the lost chance, and are therefore irrelevant to his claim.[9] The uncertainty here is not in the amount of damages, but in the possibility any breach of duty by GCI was a legal cause of the injury DeNardo claims he suffered.

---

**3.** *Id.*

**4.** *See Kooly v. State*, 958 P.2d 1106, 1107 (Alaska 1998).

**5.** *City of Valdez v. Valdez Dev. Co.*, 523 P.2d 177, 184 (Alaska 1974).

**6.** *See Stadnicky v. Southpark Terrace Homeowner's Ass'n, Inc.*, 939 P.2d 403, 405 (Alaska 1997).

**7.** *See id.*

**8.** *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 636 (Alaska 1996) (quoting *City of Palmer v. Anderson*, 603 P.2d 495, 500 (Alaska 1979)) (citation omitted).

**9.** His calculations are also probably wrong. Based on his claim that he would have made 100 calls, DeNardo reasons he had a 9 in 50,000 (or 1 in 5,555) chance of winning one prize in any of the three contests. DeNardo argues on appeal that this missed chance was worth $192.62. But this method does not take into account the fact that an entrant cannot win two prizes within one contest. The actual expected value of DeNardo's lost chance at winning one prize in any of the three contests is closer to $21.

These calculations appear, by and large, to be consistent with the approach a majority of the court took in *Van Gulik v. Resource Development Council for Alaska, Inc.*, 695 P.2d 1071, 1073–74 (Alaska 1985). Other calculations might also be required to determine the value of a lost chance, potentially including the cost to DeNardo of meeting the contest entry requirements.

GCI does not argue that DeNardo's ability to enter the contest by submitting hand-printed entries, without making calls, has any bearing on the issues raised on appeal.

In a case involving the eminent domain taking of mining property, the Supreme Court of Montana addressed the different types of speculation in damages assessment.[10] Mine owners there alleged they were entitled to both (1) the surface value of the land taken, and (2) damages resulting from the difficulty of conducting future, prospective mining operations on neighboring land they continued to own.[11] The court approved the first category of damages and disapproved the second.[12] It noted:

> Throughout this opinion the word "speculative" has appeared in two senses. In the one sense, it is used to describe undeveloped property that may have a value due to mineral, timber, housing, or other potential. A market value for such property may be shown. The value is speculative, but it is able to be objectively appraised.... The other use of the word is when in the company of the word "conjectural". In this sense the meaning is that certain damages to property may not be recognized by law and compensated for because they are too remote, obscure, undefinable, problematical, or the like.[13]

■ DeNardo's claim falls into the latter category. Had DeNardo been able to enter the contest by making 100 telephone calls, his chances of winning one of the prizes would have been remote, on the order of 9 out of 50,000.[14] This improbability would have been so great, and the chances of his winning so remote, that we see no basis for asking a fact finder to consider whether GCI's alleged breach was a legal cause of injury to DeNardo. The damages (assuming breach, causation, and injury) may not themselves be too speculative to calculate, but we cannot see how DeNardo, as the party bearing the burden of persuasion, could prove by a preponderance of the evidence that a breach caused him to suffer the injury he claims: loss of any one of the prizes. Accordingly, there is no reasonable basis on which to award him the damages he seeks.

DeNardo cites *Van Gulik v. Resource Development Council for Alaska, Inc.*,[15] to support his contention that these damages are not speculative. But in that case the plaintiff had already won the contest, or at the very least had become one of the two remaining contenders.[16] He either had a certain right to $5,000 (half the grand prize per an equal-split agreement), or an equal chance at the whole $10,000 grand prize.[17] The probability the plaintiff would win some substantial prize in that case was far more certain than DeNardo's. Moreover, the plaintiff's chance at winning did not require any additional expenditure, unlike the long distance phone calls DeNardo would have had to make to win.

As we noted in *Van Gulik*, § 348(3) of the Restatement (Second) of Contracts[18] discusses prospective and conditional damages.[19] Section 348(3) observes:

> If a breach is of a promise conditioned on a fortuitous event and it is uncertain whether the event would have occurred had there been no breach, the injured party may recover damages based on the value of the conditional right at the time of the breach.[20]

**10.** *See State Highway Comm'n v. Antonioli*, 145 Mont. 411, 401 P.2d 563, 564–66 (1965).

**11.** *See id.*

**12.** *See id.*

**13.** *Id.* at 567. Black's Law Dictionary defines "speculative damages" as "[p]rospective or anticipated damages ... which depend upon future developments which are contingent, conjectural, or improbable." *See* Black's Law Dictionary 392 (6th ed.1990).

**14.** There were nine prizes total; three of these were final prizes, and six were preliminary prizes.

**15.** 695 P.2d 1071 (Alaska 1985).

**16.** *See id.* at 1072.

**17.** *See id.*

**18.** Restatement (Second) of Contracts § 348(3), at 120 (1981).

**19.** *See id.* at 1073.

**20.** *Id.*

The comment to § 348 notes that under this rule, the injured party "has the alternative remedy of damages based on the value of his conditional contract right at the time of breach, or what may be described as the value of his 'chance of winning.'"[21] But DeNardo did not seek compensation for his chance of winning; he sought the value of the prizes.

■ DeNardo finally contends that GCI affiant Stephanie Kesler's failure "to produce her expert's report" prejudiced his case, and prevented him from making his damages more concrete. Kesler was listed as a lay witness, and made averments in her affidavit well within the realm of those permitted for lay witnesses.[22] GCI owed no production obligation under Alaska Civil Rule 26(a)(2) with regard to Ms. Kesler's affidavit.

We affirm GCI's summary judgment.

### 2. Punitive damages

■ A punitive damages claim cannot stand alone; because we reject DeNardo's underlying claim, we also necessarily affirm summary judgment on his punitive damages claim.[23]

### 3. Tariff

Because we affirm GCI's summary judgment on other grounds, we need not consider whether GCI's tariff protected it from DeNardo's claims.[24]

### D. Costs and Attorney's Fees

DeNardo attacks the awards of attorney's fees and costs as improper. His argument is based on his assumption that we will overturn GCI's summary judgment. Because we affirm the summary judgment, we also affirm the awards of attorney's fees and costs.

### E. Spoliation of Evidence

■ GCI destroyed, in the two years following completion of the sweepstakes, "most of the records" regarding sweepstakes entries. DeNardo contends that this destruction constitutes spoliation of evidence.[25] GCI responds by asserting that basic elements of a spoliation claim—notice of a potential claim, proximate cause, and damages—are absent.

■ Spoliation is by nature a separate tort action.[26] DeNardo's original complaint did not allege spoliation, and he did not move to amend his complaint to assert a spoliation claim. DeNardo first raised spoliation in his motion for reconsideration, where he argued that the destruction of evidence "carries with it a presumption against defendant's defense, if not allowing an amendment of the complaint to add the tort of spoliation." The superior court did not discuss this argument in denying reconsideration.

DeNardo argues on appeal that he should have been given the opportunity to amend his complaint. But he never moved to

21. *Id.* cmt. d, at 122.

22. *See* Alaska R. Evid. 701 (allowing "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."). *See also* Alaska R. Evid. 702 (delimiting expert testimony).

23. *See Rutledge v. Alyeska Pipeline Serv. Co.,* 727 P.2d 1050, 1057 (Alaska 1986).

24. The tariff provided in part:

The liability of the Company for damages: arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission, or failures or defects in facilities furnished by

the Company, occurring in the course of furnishing service or other facilities and not caused by the negligence of the customer or; of the Company in failing to maintain proper standards of maintenance and operation and to exercise reasonable personnel supervision; shall in no event exceed an amount equivalent to the proportioned charge to the customer for the period of service during which such mistake, omission, interruption, delay or error or defect in transmission, or failure or defect in facilities occurs.

25. We recognized spoliation of evidence as a tort in *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 463–64 (Alaska 1986).

26. *See id.* at 463.

amend his complaint in the superior court. Because he first raised the spoliation issue in moving for reconsideration, he failed to preserve the issue in the superior court. The issue is therefore not properly before us on appeal.[27]

IV. *CONCLUSION*

For these reasons, we AFFIRM the judgment below.

---

**27.** *See Stadnicky v. Southpark Terrace Homeowner's Ass'n, Inc.,* 939 P.2d 403, 405 (Alaska 1997).