In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-1686

AHMAD MILAM, *et al.*,

*Plaintiffs-Appellants*,

*v.*

DOMINICK'S FINER FOODS, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 9343—**Joan Humphrey Lefkow**, *Judge*.

ARGUED NOVEMBER 6, 2009—DECIDED DECEMBER 7, 2009

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. This employment discrimination suit, filed in 2003, pits six black produce clerks at a Dominick's grocery store in Chicago against their employer. The plaintiffs joined their union as a defendant too, but their only claim against it that is distinguishable from their claim against Dominick's—that the union had shirked its duty to the plaintiffs under its collective bargaining agreement with their employer—was aban-

doned in the district court. The plaintiffs' effort to revive it in their reply brief in this court comes too late.

The plaintiffs argue that in 2001 and 2002 Dominick's discriminated against them on racial grounds when it classified two white women as produce clerks without proper notice that would have enabled the plaintiffs to claim hours from the women (that is, to work during the women's assigned hours instead of them) because the women had less seniority than they. Every week, Dominick's posts a production schedule listing how many hours each employee in a particular classification, such as produce clerk, is scheduled to work during the week. A produce clerk who notices that a less senior produce clerk is scheduled to work that week can claim his or her hours, if the senior clerk wants to work more hours. This is a variant of the "bumping" rights frequently conferred by collective bargaining agreements. See, e.g., *Wilbert v. Commissioner*, 553 F.3d 544 (7th Cir. 2009).

One of the white women was offered a promotion to produce clerk and accepted it, but then changed her mind, preferring to remain a salad-bar clerk. In the meantime, however, her promotion had been recorded in Dominick's corporate records. No one noticed the mistake. She continued working in the salad bar, though apparently she was seen from time to time in the produce section; whether she was actually working there is unclear. The plaintiffs argue that Dominick's failure to list her in the weekly production schedule as a produce clerk prevented them from claiming her hours. That is a

frivolous argument. She was not a produce clerk, and had no hours as a produce clerk to be claimed. Had she been erroneously listed on the weekly production schedule as a produce clerk and a senior produce clerk had tried to claim her hours, the error would quickly have been discovered.

The other woman was in fact reclassified as a produce clerk when her duties as a bulk clerk were phased out, but for eighteen months after the reclassification her name was not moved from the bulk-clerk section of the production schedules to the produce-clerk section above it. The plaintiffs must have seen her working as a produce clerk and known she was junior to them because she'd just started doing that work. So had they been interested in claiming her hours, they would have looked for her name on the production schedule and either not seen it in the produce-clerk section of the schedule or seen it in the bulk-clerk section and either way would have known that something was fishy and complained. Probably none of the plaintiffs was interested in claiming hours, though this is not certain because after the mistake was corrected and the woman's hours were listed in the produce-clerk section of the schedule, three of the six plaintiffs did claim some of her hours.

Dominick's had moved for summary judgment in 2006. The motion, denied the following year (the judge had granted it earlier but then decided to reconsider it), should have been granted forthwith. The woman erroneously listed in company records as a produce clerk received no benefit at the expense of the plaintiffs, or anyone else,

from the mistake; there was no conceivable discrimination in her favor. The other woman may have received a benefit from the placement of her name in the wrong section of the production schedule, because she might have lost some hours had the mistake been discovered earlier. So here were the glimmerings of a discrimination claim, since she was white and a woman and the plaintiffs were black men. But Dominick's presented evidence that the failure to list her hours in the right place on the production schedule was an innocent mistake, and the plaintiffs presented no rebuttal. If a defendant presents evidence of a noninvidious reason for the employment action of which a plaintiff is complaining, the plaintiff can defeat summary judgment only by showing that the reason given by the employer was phony—a "pretext," as the cases say. E.g., *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178-79 (7th Cir. 1997). No effort to do that was made in this case.

Instead of ending then and there, the case dragged on for another year, until the eve of trial, when the judge discovered that the plaintiffs had no evidence of damages. (No injunctive relief was sought.) As it was apparent from the outset that damages would be difficult to prove, the plaintiffs' theory and evidence of damages should have received careful scrutiny earlier in the litigation. Any damages would have had to be based on hours worked by the second woman before the erroneous listing of her hours on the weekly production schedule was corrected. Those hours would have had to be matched with the hours worked by the plaintiffs during that period, since a senior produce clerk could claim

hours from a junior one only if the two were scheduled to work different hours on the same day. Any of the woman's time during which another produce clerk junior to the plaintiffs was also working, but no hours were claimed by any of the plaintiffs, showing that they didn't want to work during those hours, would need to be subtracted, along with hours that the plaintiffs could not have claimed because of maximum-hour restrictions in the collective bargaining agreement. After these adjustments were made, some evidence would have had to be presented concerning the plaintiffs' propensity for claiming hours, to rebut the inference that they had no desire to work additional hours. None of the requisite calculations was made. The records of all hours worked by the plaintiffs and the second woman had been produced to the plaintiffs' lawyer but he had not analyzed them; he proposed merely to dump them on the jury.

By the eve of trial, in 2008, the events giving rise to the plaintiffs' claims were five to six years in the past, and the plaintiffs do not claim to have remembered their intentions or desires with regard to claiming hours years earlier. There is no evidence that any of them claimed *any* hours during the period of the alleged discrimination. The fact that three of them began claiming hours from the second woman when her hours were properly listed is some evidence that they might have begun claiming hours from her earlier had they known her status. But their lawyer made no effort, by projecting their claiming behavior backward in time, or otherwise, to estimate how many of her hours they

might have claimed earlier. And since there were only a handful of produce clerks in the store, it is hard to believe that had the plaintiffs been interested in claiming hours they would have failed to notice that a produce clerk junior to them was not listed in the produce-clerk section of the production schedule that they consulted at the beginning of each week.

Another possible inference is that there were so many other hours that the plaintiffs could have claimed from junior produce clerks that the plaintiffs' failure to claim hours from the woman was immaterial. But the fact that they started claiming her hours when they discovered that she was listed as a produce clerk junior to them undermines that inference. So does the fact that the production schedules list only one produce clerk (who was not a plaintiff) who was junior to four of the plaintiffs during the period of alleged discrimination and two who were junior to one of the plaintiffs. The remaining plaintiff is not listed, adding to the mysteries of this case that the plaintiffs' lawyer did not attempt to plumb.

He argues that he should have been allowed to litigate damages on the theory that what his clients lost was a chance to claim hours from the second woman. Loss of a chance—a probabilistic injury—is a proper damages theory. E.g., *Alexander v. City of Milwaukee*, 474 F.3d 437, 449 (7th Cir. 2007); *Biondo v. City of Chicago*, 382 F.3d 680, 688 (7th Cir. 2004); *Bishop v. Gainer*, 272 F.3d 1009, 1016-17 (7th Cir. 2001); *Doll v. Brown*, 75 F.3d 1200, 1205-06 (7th Cir. 1996); *DeNardo v. GCI Communication Corp.*, 983 P.2d 1288,

1290-92 and n. 9 (Alaska 1999); *Youst v. Longo*, 729 P.2d 728, 736-37 and n. 9 (Cal. 1987). But it requires evidence of the loss of what economists call an "expected benefit." Suppose you're playing roulette on a 37-number wheel (18 red, 18 black, and 1 green) at the Casino de Monte-Carlo, and after you have placed your $1,000 bet on red, which will pay you $2,000 if the ball lands on red, the casino collapses through the negligence of a building contractor, destroying not only the roulette wheel but also your chips, and you cannot get the money you paid for them back because all the casino's records were destroyed when it collapsed. You've suffered a loss equal to a 48.6 percent chance of winning $2,000. So $972.73 would be your damages. But the plaintiffs presented no evidence from which any probability between 0 and 100 percent could be assigned to a loss of hours that might have been claimed from the second woman.

This case should have been dismissed years ago; its protraction has undoubtedly imposed heavy legal expenses on Dominick's and the union. In the interest of justice and economy, every effort should be made by the district court from the start of a case to determine its likely merit and guide it to as swift a conclusion as is consistent with doing justice to the parties. *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d 638, 648 (7th Cir. 2007); *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 338, 340 (7th Cir. 2004); *Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851-52 (7th Cir. 2002); *Isby v. Clark*, 100 F.3d 502, 504 (7th Cir. 1996); *Nelson v. Streeter*, 16 F.3d 145, 151 (7th Cir. 1994); *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1265 (7th Cir. 1977);

see also *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188-89 (11th Cir. 2005); *Manual for Complex Litigation* §§ 10.1, 11.33 (4th ed. 2004); cf. *Mirfasihi v. Fleet Mortgage Corp.*, 551 F.3d 682, 686-87 (7th Cir. 2008). Recent decisions of the Supreme Court emphasize the importance of prompt dismissal of unmeritorious cases even if they are not frivolous, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559-61 (2007)—as the present case, however, was.

AFFIRMED.